IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SANDRA S., | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) No. 19 cv 8421 |
| v. | ) |
| | ) Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
|     **Defendant.** | ) |

**MEMORANDUM OPINION AND ORDER**

Claimant Sandra S. ("Claimant") brings a motion to reverse the final decision of the Commissioner of Social Security (the "Commissioner") to deny her claim for Disability Insurance Benefits ("DIBs"). The Commissioner filed a response seeking to uphold its decision to deny benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §405(g). For the reasons stated below, Claimant's motion to reverse the Commissioner's final decision, (Dckt. #15), is granted, and the Commissioner's response seeking to uphold its decision to deny benefits, (Dckt. #22), is denied.

**I.    BACKGROUND**

    **A.    Procedural History**

On December 6, 2016, Claimant filed for DIBs, alleging disability beginning April 22, 2015. (Administrative Record ("R.") 15). Claimant's application was denied initially and upon reconsideration. (*Id.*). Claimant filed a timely request for a hearing, which was held on

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to plaintiff only by her first name and the first initial of her last name. Acting Commissioner of Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

September 19, 2018, before Administrative Law Judge ("ALJ") Daniel Dabado. (R. 15, 38). On November 8, 2018, the ALJ issued a written decision denying Claimant's application for benefits. (R. 15-32). Claimant filed a timely request for review with the Appeals Council. On October 28, 2019, the Appeals Council denied Claimant's request for review, leaving the decision of the ALJ as the final decision of the Commissioner. (R. 1-3). This action followed.

**B.     The Social Security Administration Standard**

To qualify for disability benefits, a claimant must demonstrate that she is disabled, meaning she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the SSA determines whether the claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind. Oct. 22, 2019). If a claimant establishes that she has one or more physical or mental impairments, the SSA then determines whether the impairment(s) standing alone, or in

combination, are severe and meet the twelve-month durational requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, she is considered disabled and no further analysis is required. If a listing is not met, the analysis proceeds. 20 C.F.R. §404.1520(a)(4)(iii).

Before turning to the fourth step, the SSA must assess the claimant's residual functional capacity ("RFC"), meaning her exertional and non-exertional capacity to work despite the limitations imposed by her impairments. Then, at step four, the SSA determines whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id.* If she cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform given her RFC, age, education, and work experience. If such jobs exist, the individual is not disabled. 20 C.F.R. §404.1520(a)(4)(v).

  C.  **The Evidence Presented to the ALJ**

Claimant, who was sixty-five years old at the time of her administrative hearing, alleges that she became disabled in April 2015 due to limitations resulting from atrial fibrillation, level II obesity, bilateral knee arthritis with advanced left knee arthritis, lumbar spondylosis, anxiety, depression, post-traumatic stress disorder, and hypertension. Claimant seeks to reverse the Commissioner's decision to deny her claim for benefits for several reasons, including that the ALJ erred by determining that she had the physical RFC to perform sedentary work. Because

this argument has merit for the reasons explained below, (*see* Section III, *infra*), the Court will not address Claimant's other arguments[2] and the record evidence discussed in this opinion is limited to the evidence that bears on Claimant's physical capabilities and the ALJ's assessment of her physical RFC.

### 1. Evidence from Claimant's Testimony

Claimant appeared with counsel at the September 19, 2018, hearing and testified in response to questioning by the ALJ and her own attorney. Claimant last worked as an Information Technology manager between 2007 and April 22, 2015, when her position was eliminated. (R. 44-45). She does not believe that she could perform the job at present because she could not handle the stress and her IT skills are three years out of date. (R. 47).

When asked whether she could perform data entry work, Claimant testified that she could not because it would require sitting at a computer for a length of time. (*Id.*). Claimant further testified that she can sit for a half hour without a problem and that, thereafter, she typically – but not always[3] – begins to feel pain in her lower back, neck, and right shoulder, numbness in her hip and leg, and pain shooting down to her foot. (R. 47-48). Claimant rated the intensity of the pain in her lower back as being at a six or seven out of ten and explained that she would experience a sharp pain in her neck and shoulder area that was like "having pins and needles in [her]

---

[2] *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate DeCamp's limitations in concentration, persistence, and pace, we do not address DeCamp's other argument.").

[3] Claimant made clear that there are days when she does not experience pain and can sit for longer periods of time. (R. 61).

muscles." (R. 48-49). Claimant cannot sit through a show or read a book for more than thirty to forty-five minutes due to the pain without getting up or lying down. (R. 60-61).[4]

Claimant's primary care physician David Herman, M.D., prescribed a muscle relaxant (Flexeril a.k.a. Cyclobenzaprine) for Claimant and referred her to a chiropractor for pain management and to help with her lower back. (R. 48-49, 58-59). Claimant has regular monthly appointments with the chiropractor and occasionally goes more frequently (two to three times a week). (R. 58-59). The record further reflects that Claimant was treated by her chiropractor on approximately eighty occasions between May 2013 and June 2017. (R. 352-493). Claimant, who began experiencing pain in 2008, testified that she was suffering from lower back and hip pain and a numb leg at the hearing. (R. 47-48).

### 2. Evidence from Physicians Who Examined and/or Treated Claimant

On March 11, 2017, Julia Kogan, M.D., performed a forty-minute consultative examination on Claimant. (R. 574-582). Claimant reported a number of psychological and physical complaints – including constant neck, shoulder, and low back pain – and stated that she had difficulty sitting for more than fifteen minutes. (R. 574). Claimant assessed the intensity of her pain as a six out of ten. (*Id.*). Claimant also reported that she was receiving chiropractic treatments and therapeutic massages one to two times a month. (*Id.*). Dr. Kogan had Claimant engage in a series of movements so that she could assess her cervical and lumbar spine, shoulders, hips, knees, ankles, elbows, wrists, and hands. (R. 576-580). Dr. Kogan found that Claimant was "limited by obesity and low back pain" and referred Claimant for a lumbar spine x-ray. (R. 581). Dr. Kogan reported that Claimant "had no difficulty in standing, bending,

---

[4] Similarly, in his third-party function report, Claimant's husband reported that Claimant has lower back pain when sitting and standing and that she experiences neck and shoulder pain when using the computer. (R. 244, 250).

5

sitting, hearing, minimal difficulty lifting, carrying, no difficulty with speech, gait-waddling, [and that] fine manipulation and handling small objects is intact." (R. 581).

Claimant received her lumbar spine x-ray later that same day (March 11, 2017). (R. 585). The x-ray revealed that Claimant had moderate degenerative spondylosis including endplate and facet degeneration at L5-S1. (*Id.*). The x-ray did not reveal any evidence of an acute facture, malalignment within the lumbar spine, or significant spondylolisthesis. (*Id.*).

On April 27, 2018, cardiologist Jajeh Fahd, M.D. – who treated Claimant for paroxysmal atrial fibrillation since March 2017 – provided a medical source statement evaluating Claimant's cardiac residual functional capacity. (R. 662, 591-93). Dr. Fahd noted that Claimant was experiencing shortness of breath, fatigue, palpitations, and sweatiness. (R. 591). He found that Claimant could walk one block without rest or severe pain and that she could frequently lift and carry twenty pounds. (*Id.*). Dr. Fahd made no findings regarding how many minutes or hours Claimant could sit at one time, and he likewise made no findings regarding how long Claimant could sit and stand/walk in an eight-hour workday. (R. 592). Instead, Dr. Fahd deferred to Claimant's chiropractor for findings on these issues. (*Id.*).

### 3. Evidence from the State Agency Medical Consultants

State agency physician Prasad Kareti, M.D., reviewed Claimant's file on March 22, 2017. (R. 75-81). Dr. Kareti noted – in reliance on Dr. Kogan's March 11, 2017 consultative examination – that Claimant had no difficulty standing, bending, or sitting. (R. 77). After reviewing a substantial portion of the medical evidence, Dr. Kareti found that Claimant's impairments were non-severe and caused no severe functional limitations. (R. 80). Dr. Kareti further found that Claimant had the physical RFC to perform "unskilled" work. (R. 87). State agency physician Richard Bilinsky, M.D., reviewed Claimant's file at the reconsideration level

6

on June 27, 2017. (R. 90-104). Dr. Bilinksy's findings mirrored those of Dr. Kareti's with one exception. In particular, while he repeated Dr. Kareti's observation that Claimant's impairments were non-severe and caused no severe functional limitations, (R. 97), he nonetheless found – incongruously – that Claimant had two severe impairments: DDD (Disorders of Back-Discogenic and Degenerative) and Cardiac Dysrhythmias. (R. 98).

On February 18, 2018, Karen Schnute, M.D., an agency medical consultant, performed a medical evaluation/case analysis of Claimant's medical file. (R. 588). Dr. Schnute noted that "[i]maging indicates preservation of vertebral body heights and disc spaces with moderate facet degeneration L5-S1." (*Id.*). She further found that "[a] review of MER is consistent with NS physical and affirms examiner's 416." (*Id.*). The ALJ understood Dr. Schnute to find that Claimant's impairments were non-severe. (R. 30).

### 4. Evidence from Vocational Expert's Testimony

The Vocational Expert ("VE") testified in response to the ALJ's hypothetical questions that Claimant would be unable to perform her past work as a Director, Data Processing or Manager, Data Processing, which was listed at specific vocational preparation ("SVP")[5] eight and sedentary. (R. 66-67). The VE further testified that an individual with the same age, education, past relevant work experience, acquired skills, and RFC as Claimant could perform the position of Data Entry Clerk, which has an SVP of four and is sedentary work. (R. 68-69).

---

[5] The Dictionary of Occupational Titles ("DOT") "defines SVP as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Monstrola v. Astrue*, No. CIV.A.07-1220, 2009 WL 602987, at *3 n.5 (W.D.Pa. Mar. 9, 2009). Under the DOT, skilled work corresponds to an SVP of 5-9, semi-skilled work corresponds to an SVP of 3-4, and unskilled work corresponds to an SVP of 1-2. *Id.*, at *3 n.6.

**D.     The ALJ's Decision**

The ALJ applied the five-step inquiry required by the Act in reaching his decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her application date. (R. 17). Next, at step two, the ALJ determined that Claimant suffered from the severe impairments of atrial fibrillation, level II obesity, bilateral knee arthritis with advanced left knee arthritis, lumbar spondylosis, anxiety, depression, and post-traumatic stress disorder. (*Id.*). The ALJ considered Claimant's hypertension and hypothyroidism but found these impairments to be non-severe. (R. 18).

At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. The ALJ also determined that the "paragraph B" criteria were not satisfied, finding Claimant had no limitation in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace, and moderate limitations in interacting with others and adapting or managing oneself. (R. 19-20).

The ALJ went on to assess Claimant's RFC as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except only occasional stooping, crouching, crawling, kneeling, and balancing, and only occasional ramps and stairs and no ladders, ropes, or scaffolds. She cannot work at unprotected heights or use heavy equipment, operating machinery, or be exposed to hazards. She requires end of day performance expectations, not hourly. She can tolerate the proximity of others, but no frequent communication or more than occasional interaction with co-workers and supervisors. The work should involve no more than repetitive, short-cycle work.

(R. 21).

At step four, the ALJ determined that Claimant was unable to perform her past relevant work as a director or manager of data processing. (R. 31). At step five, the ALJ concluded that,

given Claimant's age, education, work experience, and RFC, she could perform other jobs (such as data entry clerk) that exist in significant numbers in the national economy. (R. 31-32). Therefore, the ALJ found that Claimant was not under a disability from the application date through the date of the decision. (R. 32).

## II. STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to his conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d

589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

### III. ANALYSIS

Claimant argues that the Commissioner's decision must be reversed because the ALJ: (1) erroneously assessed her physical RFC; (2) erroneously weighed the medical opinion evidence; and (3) erroneously assessed Claimant's subjective allegations that concerned the intensity, persistence, and limiting effects of her pain and symptoms. As stated above and explained in detail below, the Court finds Claimant's first argument to be persuasive and it will not address the other two. The Court's decision in this regard is not a comment on the merits of Claimant's other arguments and she is free to assert them on remand.

**A. The ALJ's failure to properly address Claimant's physical RFC requires remand.**

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014). In other words, the RFC "is the most an individual can work despite his or her limitations or restrictions." *Jarnutowski v. Kijakazi*, No. 21-2130, 2022 WL 4126293, at *4 (7th Cir. Sept. 12, 2022). The task of assessing a claimant's RFC is reserved to the Commissioner. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). As the Seventh Circuit recently reiterated:

> The relevant regulation, SSR 96-8p, lists seven strength functions that an ALJ must consider when assessing a claimant's RFC to work: lifting, carrying, sitting, standing, walking, pushing, and pulling. *Id.* at 34477. The regulation also requires an ALJ to describe 'how the evidence supports each conclusion [about a strength function], citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations).' *Id.* at 34478.

*Jarnutowski*, 2022 WL 4126293, at *4. Furthermore, "[a]n ALJ's failure to comply with SSR 96-8p's requirements is a sufficient basis, by itself, for [a court] to reverse an ALJ's decision." *Id.*; *Bjornson v. Astrue*, 671 F.3d 640, 649 (7th Cir. 2012) (remanding where the ALJ's "opinion failed to build a bridge between the medical evidence . . . and the conclusion that she is able to work full time in a sedentary occupation"); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ needed to explain how she reached her conclusions about [claimant's] physical capabilities."); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (where the ALJ "did not explain" how he arrived at his conclusions regarding claimant's RFC, that "omission in itself is sufficient to warrant reversal of the ALJ's decision.").

Finally, "the ALJ must consider the combination of *all* limitations on the ability to work, including those that do not individually rise to the level of a severe impairment, . . . [and] [a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted; emphasis added); *Jarnutowski*, 2022 WL 4126293, at *4; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

        1.      **The ALJ failed to build a logical bridge between the evidence and his RFC determination.**

The essential question here is whether the ALJ's finding that Claimant had the RFC to perform sedentary work, with the noted limitations, is supported by substantial evidence. Under the pertinent regulation, "sedentary work . . . requires sitting for 6 hours and standing and/or walking for 2 hours during an 8-hour workday." *Collins v. Astrue*, 324 Fed.Appx. 516, 517 (7th Cir. 2009) (citing 20 C.F.R. §404.1567(a); Social Security Ruling ("SSR") 83-10, 1983 WL 31251 (Jan. 1. 1983)). Claimant asserts, among other things, that the ALJ failed to properly consider her sitting limitations as required by SSR 96-8p in determining her RFC. The Court agrees for the following reasons.

11

To begin, the ALJ does not expressly find that Claimant has the ability to sit for six hours out of an eight-hour workday. Instead, such a finding is necessarily implied by the ALJ's determination that Claimant can perform sedentary work. Nonetheless, regardless of whether his finding was explicit or implicit, the ALJ provides no explanation as to how the record evidence supports his conclusion that Claimant has the RFC to satisfy the six-hour sitting requirement of sedentary work. The ALJ's failure to offer such an explanation does not comply with SSR 96-8p and further fails to build an accurate and logical bridge from the evidence to his conclusion that Claimant can perform sedentary work. This deficiency, in itself, provides a sufficient basis to remand. *Jarnutowski*, 2022 WL 4126293, at \*4; *Briscoe*, 425 F.3d at 352.

### 2. The ALJ improperly discounted Claimant's testimony regarding her sitting limitations based on misapprehensions of the record and unpersuasive legal propositions.

Claimant testified that she is typically only able to sit for a half an hour before experiencing pain in her lower back, neck, and right shoulder, numbness in her hip and leg, and pain shooting down to her foot. (R. 47-48). The ALJ acknowledged Claimant's testimony and found that Claimant's medically determinable impairments could reasonably be expected to cause these symptoms. (R. 22-23). Nonetheless, the ALJ concluded that Claimant's statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely consistent with the medical evidence and the other evidence in the record and generally do not support the loss of functioning that she asserts. (R. 23). The ALJ cited several reasons for discounting Claimant's testimony regarding her pain and the limitations on her ability to sit. As shown below, each of the ALJ's reasons was based on a misapprehension of the factual record or on legal propositions that have been found unpersuasive by the Seventh Circuit and other courts.

12

For example, the ALJ found that Claimant "only infrequently" saw a chiropractor for her neck and back pain, (R. 24), despite the fact that her primary care physician referred her to the chiropractor for pain management. (R. 58-59). However, the record shows claimant was treated by her chiropractor on approximately eighty occasions between May 2013 and June 2017. (R. 352-493). This number of treatment sessions is consistent with Claimant's testimony that she has regular monthly appointments with the chiropractor and sometimes goes more frequently for treatment. (R. 58-590).

The ALJ further noted – with apparent skepticism – that the chiropractor used terms like "somatic" to characterize Claimant's pain. (R. 24). However, "'the mere fact that [a claimant's] pain has a somatic component does not justify a finding that his complaint of pain is not credible.'" *Gonzalez v. Apfel*, No. CIV 98-669 JC/LFG, 2000 WL 26739736, at *5 (D.N.M. July 12, 2000), *quoting Smith v. Apfel*, 141 F.3d 1185, 1998 WL 105935, at *3 (10th Cir. Mar. 11, 1998). As the Seventh Circuit has recognized:

> Pain is always subjective in the sense of being experienced in the brain. The question whether the experience is more acute because of a psychiatric condition is different from the question whether the applicant is pretending to experience pain, or more pain than she actually feels. The pain is genuine in the first, the psychiatric case, though fabricated in the second. The cases involving somatization recognize this distinction.

*Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004). The *Carradine* court went on to find that the ALJ erred by concluding that the claimant's somatoform disorder "implies she exaggerates the severity of symptoms she reports." *Id.*; *cf. Simila v. Astrue*, 573 F.3d 503, 517-18 (7th Cir. 2009) (contrasting the ALJ's analysis in that case with the ALJ's analysis in *Carradine*).

Next, the ALJ noted that "despite allegedly toxic back pain that was 6-7/10 and interfered with her sitting for any extended periods, she told her primary care physician in February 2018

13

that her pain level was only 2/10." (R. 23). However, as the ALJ recognized elsewhere, (R. 22), Claimant – who was prescribed Flexeril to deal with her pain, (R. 48-49) – testified that there are days when she does not experience the pain in her back, neck, and shoulders. (R. 61). The fact that Claimant had a relatively low level of pain on one day does not necessarily undermine her testimony about the severity of her pain on other, more typical days.[6] As the Seventh Circuit has recognized:

> A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days; that is true of the plaintiff in this case. Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job.

*Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008).

Finally, in his November 2018 decision, the ALJ cited to Claimant's testimony that she began experiencing pain in 2008 while she was working and only stopped working in April 2015 because her job was eliminated to support his finding that Claimant required no greater physical accommodation than he provided in the RFC. (R. 25). However, the fact that Claimant was working while she was experiencing the purportedly disabling pain does not mean that she is not now disabled or even that she was not disabled during the time she was working. As the Seventh Circuit has held, "the fact that someone works is not a sufficient ground for concluding that she's not disabled. We have explained that 'even persons who are disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits.'" *Goins v. Colvin*, 764 F.3d 677, 679 (7th Cir. 2014), *quoting Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012); *see also Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003) ("This would be correct were there a logical incompatibility between working

---

[6] The Court notes that, at her next appointment with Dr. Herman on July 11, 2018, Claimant reported that she was sometimes experiencing a pain level of 7 out of 10. (R. 603).

14

full time and being disabled from working full time, but there is not. A desperate person might force himself to work despite an illness that everyone agreed was totally disabling.").

The ALJ's inference that Claimant required no further physical accommodations in 2018 because she was working through her pain in 2015 is further undermined by the fact that Claimant's pain was created in part by a degenerative condition in her lower back, (R. 98, 585, 588), which the ALJ found was a severe impairment, (R. 29), and would be expected to worsen over time. *See Lambert v. Berryhill*, 896 F.3d 768, 775 (7th Cir. 2018) ("Degenerative conditions often get worse over time."); *Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013) ("The term 'degenerative' implies that [claimant] suffers from a condition that will get worse over time, especially without proper treatment; it is not one that will remain stable or improve."); *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) (citing *Roddy*).

### 3. The ALJ failed to consider the impact of Claimant's obesity on her ability to perform the sitting requirements for sedentary work.

Although the ALJ considered how Claimant's obesity[7] impacted her ability to stand and walk in his RFC determination and faulted the state agency physicians for failing to do the same, (R. 24, 29), he failed to discuss how her obesity impacted her ability to sit for sufficiently long periods of time to be able to perform sedentary work. This was an error. As the Seventh Circuit has noted, morbid obesity "might make it difficult for [a claimant] to sit for long periods of time, as sedentary work normally requires" and "the likely difficulties that morbidly obese persons . . . face even in doing sedentary work are sufficiently obvious." *Browning*, 766 F.3d at 707; *Michael W. v. Kijakazi*, No. 21-CV-1511, 2022 WL 3684628, at *2-3 (N.D.Ill. Aug. 25, 2022) (citing *Browning* and remanding ALJ's decision "because it lacks an adequate discussion of

---

[7] During the relevant time, Claimant's BMI fluctuated between Level II obesity and Level III, or morbid, obesity. (Dckt. #22 at 8-9 n.2); *see Browning v. Colvin*, 766 F.3d 702, 704 (7th Cir. 2014) (Persons with a BMI of over 40 are considered to be morbidly obese).

15

Plaintiff's sitting abilities (or lack thereof)" in light of her obesity); *Stevens v. Colvin*, No. 14 CV 201, 2016 WL 1535156, at *4-5 (N.D.Ill. Apr. 15, 2016) (citing *Browning* and remanding for the ALJ to analyze how claimant's extreme obesity interacted with her other impairments and how that interaction factored into her RFC); *Mitchell v. Colvin*, No. 13 CV 50209, 2015 WL 5227411, at *4 (N.D.Ill. Sept. 8, 2015) (citing *Browning*). If the ALJ thought Claimant's obesity had no impact on her ability to sit and perform sedentary work, "he should have explained how he reached that conclusion." *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012).

        **4.    The ALJ's assessment of the medical opinion evidence provides no support for his implicit finding that claimant can perform the sitting requirements of sedentary work.**

Finally, the ALJ's assessment of the medical opinion evidence provided by the physicians who treated or examined Claimant or provided consultative medical reviews of her medical file provides no support for his finding that Claimant can perform the sitting requirements of sedentary work. To begin, no physician actually opined that Claimant could meet the sedentary work threshold by sitting for six hours out of an eight-hour day. Dr. Fahd was pointedly asked how long Claimant could sit at one time before needing to get up when he was completing Claimant's cardiac residual functional capacity questionnaire, but he did not answer the question and instead deferred to her chiropractor. (R. 592). Claimant's chiropractor does not appear to have provided an answer to this question. (R. 352-493). The only medical evidence regarding Claimant's capacity to sit was provided by Dr. Kogan, who found after her forty-minute examination that Claimant had no difficulty in sitting. (R. 581). However, this finding – which state agency consultants Drs. Kareti and Bilinsky incorporated into their reports, (R. 77, 94) – sheds no light on Claimant's ability to sit for a sufficiently long period to meet the

16

sedentary work threshold. A person could sit without difficulty yet have difficulty remaining seated after a specified period of time.

In any case, the ALJ gave only "some weight" to Dr. Kogan's opinion that Claimant had no difficulty in standing, bending, sitting, and hearing because the ALJ found that Claimant "has *significantly greater limitations*, especially with regard to the exertional activities of standing, walking, lifting, and carrying" and because her opinion was based on a one-time examination. (R. 30) (emphasis added).[8] The ALJ did not explain whether those "significantly greater limitations" extended to Claimant's ability to sit or, if not, why not given Claimant's testimony regarding her inability to sit for extended periods and her degenerative disc disease. If the ALJ believed that the significantly greater limitations he found with respect to Claimant's ability to stand, walk, lift, and carry did not impact upon Claimant's ability to sit, he was obligated to say so in order to build an accurate and logical bridge between the evidence and his conclusion.

In sum: for all of the above reasons, the Court finds that the ALJ failed to comply with the requirements of SSR 96-8p, and that he otherwise failed to build a logical bridge from the evidence to his conclusion regarding Claimant's physical RFC. Accordingly, a remand is warranted. *Jarnutowski*, 2022 WL 4126293, at *4; *Bjornson*, 671 F.3d at 649; *Scott*, 647 F.3d at 740; *Briscoe*, 425 F.3d at 352.

---

[8] Likewise, the ALJ found that Claimant had greater limitations than Drs. Kareti and Bilinsky found but nonetheless accorded their opinions "some weight" because they indicated that Claimant was "not at least as limited as she suggested." (R. 29).

17

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse the Commissioner's final decision, (Dckt. #15), is granted, and the Commissioner's response seeking to uphold its decision to deny benefits, (Dckt. #22), is denied.

**ENTERED:   September 16, 2022**

_____
**Jeffrey I. Cummings
United States Magistrate Judge**